IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **GREGORY SCOTT BILLS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.:** |
| **vs.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **WAL-MART STORES EAST LP,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

**NOW COMES,** Plaintiff Gregory Scott Bills ("Plaintiff") and avers against Wal-Mart Stores East LP ("Defendant") the following:

## PARTIES AND SERVICE

1. Plaintiff is Gregory Scott Bills, a citizen of the United States of America and of the State of Texas, and a resident of Tarrant County, Texas.

2. Defendant Wal-Mart Stores East LP, a Delaware Limited Partnership, whose registered agent in Texas is CT Corp. System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

## PRELIMINARY STATEMENT

3. Plaintiff brings this action against Defendant for discrimination based on age and disability in violation of the Age Discrimination in Employment Act, 29 U.S.C. 12201 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117, and the Texas Commission on Human Rights act in Chapter 21 of the Texas Labor Code, Section 21.001 *et. seq.*, as amended, to correct unlawful employment practices based on age and disability.

## JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), because Plaintiff asserts federal civil rights claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act. This Court has supplemental jurisdiction over Plaintiffs' Texas state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant, as Defendant regularly conducts business in this District, from its office at 2120 North Stemmons Freeway, Sanger, Texas, 76266.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Defendant regularly conducts business in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the federal and state claims herein occurred in this District.

## CONDITIONS PRECEDENT

7. All conditions precedent to jurisdiction have occurred or been complied with. A charge of discrimination was timely filed with the Texas Workforce Commission and the Equal Employment Opportunity Commission on January 27, 2020. Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter which has a mailed date of October 14, 2020.

## FACTUAL ALLEGATIONS

8. Gregory Scott Bills ("Scott") is a 56-year-old male who has worked as a truck driver for 39 years. He began working as a driver for Walmart Transportation #6868 in Sanger, Texas, on September 21, 2011.

9. While on FMLA Leave from Walmart because of rotator cuff surgeries and recovery in 2018, Scott was told several times by Wal-Mart Managers and Human Resources representatives that he would lose his job if he did not return to work.

10. Scott diligently and consistently provided his medical information to Human Resources while he was on leave. He also personally paid for his insurance from January to June 2019 as directed by HR and management in order maintain his position at Walmart.

11. At the beginning of 2019, Scott's surgeon, Nicholas D. Iagulli recommended a second shoulder surgery. When Scott informed Nina Menefee in HR that he needed a second surgery, Nina told Scott his job with Walmart was secure and he need not worry about losing his job because of the medical leave.

12. However, Cindy Forester in HR told Scott at least three times that if he was on medical leave for more than a year, he would be terminated from his employment.

**Full Release with No Restrictions and DOT Physical Roadblocks**

13. Scott received a release to return to work without restrictions from his surgeon Dr. Iagulli, two or three weeks before he would have been out on leave for a year. Walmart, however, sent Scott for a Walmart Department of Transportation ("DOT") physical in Denton, Texas, and claimed it was because he had high blood pressure.

14. The Walmart doctor in Denton asked Scott to come back a few days later for another physical to re-check his blood pressure. Scott went for the next physical in Denton, Texas a few days later, but was told that he could not pass, this time, because he had sugar in his urine, and he should see his primary care physician to address that issue.

15. Scott's primary care physician, Dr. Keith Harbour, told Scott that the sugar in his urine and high blood pressure were caused by stress and gave him a prescription to address the

issues. Scott again went back to the Walmart doctor in Denton after being on the medicine for a week and paid for another physical.

16. This time Scott was told they would check his A1C (Average Blood Sugar Test), which is a blood sugar test that is supposed to be measured over a 3-month period and test for diabetes and pre-diabetes. The Walmart doctor told Scott that his blood sugar was too high; therefore, Scott, could not, again, get a new DOT card, and return to work.

17. Scott was aware that DOT rules would allow him to drive if he were compliant with his medication even if he had diabetes, pre-diabetes or some other issue. However, Walmart told him that he could not drive based on Walmart's policy, rather than DOT guidelines.

18. The Walmart doctor in Denton told Scott to continue taking his medicine and come back for another physical, in another week.

19. At this point, Scott did not trust the Walmart doctor in Denton because he had come up with different reasons to deny Scott a passing physical.

20. Subsequently, a Primary Care Physician, Dr. David Chavez, in Haltom City, gave Scott a physical which he passed. Scott knew that in order to return to work at Walmart, he still had to get a Walmart doctor to sign off on a Walmart physical based on his experience with the company.

21. Scott called Kevin Dyer ("Kevin"), the Regional Manager for Walmart, and told him he felt like he was getting the run around by the company doctors who kept finding a different medical basis or reason why he was not able to be cleared to return to Walmart and begin driving again.

22. Scott further explained to Kevin that he had passed the physical with his personal doctors (Iagulli and Chavez) and was released to do his driving job without restrictions. Kevin told

Scott he could go to any other Walmart office to get a DOT physical, pursuant to Walmart medical clearance policy.

### Road Trip for Another Physical

23. Based on Kevin's instructions and because he did not trust the doctors in the Denton area, Scott set up another physical in Katy, Texas, at an approved Walmart DOT facility. He had worked in the Houston area in the past and was familiar with the process and facilities in the Houston area.

24. Scott passed this physical in Katy.

25. Scott went back to Sanger and gave his medical results to his General Manager, Ron McGriff ("Ron") and the Safety Manager. Ron asked him who had authorized the DOT physical in Katy and told him that he could only go to the Walmart doctor in Denton, the same doctor who had told Scott he did not pass his physicals.

26. Scott explained that the Katy doctor was in the Network and that the Regional Manager, Kevin Dyer, had authorized him to go to any doctor who was in the Network.

27. After an extended argument about whether Kevin authorized Scott to go to Katy for a physical, Ron found something else wrong with the physical form from the Katy physician. Ron decided that the form did not list Scott's medication on it and listing the medication was required for Walmart.

28. Scott pointed out that the physical form had his medicine listed at the bottom of the form. Ron said the medicine should have been *written* on the form, not typed.

29. Ron further told Scott he needed to drive back to Katy and get the physical paperwork redone and signed by that office in Katy which is over 300 miles away from Sanger.

30. Although driving over 300 back to Katy did not seem reasonable, Scott drove back to Katy as Ron instructed.

31. Once he got to Katy, Scott was told that the lady who had done his physical paperwork was not be in the office that day but would be in the Sugarland office the next day and that Scott should go and see her there the next day.

32. Scott went to the Walmart facility in Sugarland the next day, which was September 4, 2019, and asked for the lady. Scott waited for her for four hours, but she never arrived, which Scott felt was not coincidental.

33. Finally, Scott spoke with another lady at the Sugarland facility who worked with DOT compliance paperwork. The woman said Scott was diabetic. Scott explained to her that he had not been diagnosed with diabetes but had been having high blood sugar because of stress, according to his primary care physician. The lady, who was not a doctor, insisted that Scott was diabetic. She also seemed upset that Scott had gone to Katy for a physical.

34. That DOT compliance lady told him he would just have to come back another day for the first compliance lady to give him the revised paperwork that Ron had told him to obtain.

**Long Road Back Home**

35. Scott decided to drive back home to Haltom City. When he explained to Ron what had happened in Katy and Sugarland, Ron told him since he had failed the DOT physical two times, there was no need to get a third physical. Ron further said he could possibly find Scott another position with Walmart, and that Scott had 30 days to decide.

36. Ron also said that Scott, categorically, would never drive a truck for Walmart again. Scott knew at this point that the Company was trying to get rid of him.

37. Scott called Kevin Dyer and told him about the conversation with Ron.

38. Kevin told Scott that Ron was not authorized to tell him he would never drive for Walmart again. Kevin said Scott would not be terminated.

39. Since that conversation with Kevin, however, Scott has not been able to get a response from with Kevin again.

### End of the Road – Wrongful Termination

40. On September 13, 2019, Scott was terminated by Walmart for failure to timely return from leave, despite Scott's extraordinary and strenuous efforts to abide by Walmart policies and receive DOT medical clearance from a Walmart doctor to drive a truck.

41. Other drivers in their 50s and 60s were also terminated for failure to pass a DOT physical. Some drivers decided to retire or quit when they ran into the same issues as Scott, whereby a Walmart doctor would find various reasons to cause a driver to fail a physical even if the reasons did not line up with the driver's diagnosis from his primary care physician.

### Roadblock to Other Opportunities and More Favorable Treatment for Younger Drivers

42. While he was dealing with Walmart and the medical clearance issue, Scott was contacted by Martin Transportation and was eventually offered a job by Martin. However, when Martin Transportation tried to verify his employment with Walmart, Walmart's third-party entity who handled employment verifications, refused to verify Scott's Walmart employment.

43. Eventually, Walmart verified Scott's employment, but by then, Martin told him they were no longer hiring drivers.

44. Because Martin Transportation pulls trailers for Walmart, Scott believes and therefore avers that he was discriminated against and retaliated against by Walmart in that Walmart told Martin Transportation that Scott went on a leave of absence and never returned to work.

Walmart knew that was not the truth. Walmart prevented Scott from getting a new driving job with Martin.

45. Scott is aware that younger truck drivers at Walmart were treated more favorably than he was in that they were not scrutinized like he was when they were obtaining their DOT cards.

46. Scott is also aware that management had a pattern of firing older drivers more than younger drivers and that older drivers are more frequently denied a passing DOT physical for the same health or physical issues that younger drivers have, like high blood pressure or high blood sugar.

47. Scott was treated differently because of his age, because he took leave for an injury and recovery and because of perceived disabilities.

## COUNT ONE - WRONGFUL TERMINATION- VIOLATION OF THE ADA- DISCRIMINATION ON THE BASIS OF DISABILITY

48. All preceding paragraphs are incorporated herein as if fully set forth.

49. Plaintiff had a disability and a perceived disability (high blood pressure and issues with his blood sugar); he was qualified for his position as driver and able to perform the essential functions for that role; he was the subject of an adverse employment action, namely being terminated without just cause, on the basis of his disability and perceived disability.

## COUNT TWO - WRONGFUL TERMINATION- VIOLATION OF TITLE VII - AGE DISCRIMINATION

50. All preceding paragraphs are incorporated herein as if fully set forth.

51. Plaintiff is a member of a protected class in that he was over 40 at the time he was barred from returning to work and subsequently terminated; he was qualified for his position as driver; he was the subject of an adverse employment action, namely being barred from returning

to work and terminated without just cause on the basis of his age; Plaintiff was replaced by a younger employee.

### COUNT THREE - VIOLATION OF TEXAS LABOR CODE CHAPTER 21 - DISCRIMINATION ON THE BASIS OF DISABILITY AND AGE

52. All preceding paragraphs are incorporated herein as if fully set forth.

53. Plaintiff in this case belongs to two protected classes; he has a documented disability and a perceived disability and is older than forty years; Plaintiff is qualified for his job as a driver and is able to fulfill all of the essential functions; he was wrongfully terminated from his job; he was terminated on the basis of his disability and on the basis of his age.

### COUNT FOUR - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. All preceding paragraphs are incorporated herein as if fully set forth.

55. Defendant Wal-Mart Stores East, LP acted intentionally and recklessly; Defendant's conduct was extreme and outrageous; Defendant's conduct caused Plaintiff emotional distress; the emotional distress suffered by Plaintiff was severe.

56. Defendant's treatment of Plaintiff was extreme and outrageous because Defendant subjected Plaintiff to multiple physicals wherein the Walmart doctor found frivolous and varying reasons to deny a passing physical even though Plaintiff received a passing physical from a private doctor. When Plaintiff went to a Walmart facility outside the Sanger area to get a physical, he passed the physical but then was told to drive over 300 miles again to get his list of medications hand written on a form. In today's technological world, this demand made by Defendant in an of itself is extreme and outrageous.

### DAMAGES

57. Plaintiff sustained the following damages as a result of the actions and ommissions of Defendant described hereinabove:

    a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b. Back pay from the date that Plaintiff was released to return to work with restrictions, and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c. All reasonable and necessary costs incurred in pursuit of this suit;

    d. Emotional pain;

    e. Expert fees as the Court deems appropriate;

    f. Front pay in an amount the Court deems equitable and just to make plaintiff whole;

    g. Prejudgment interest;

    h. Loss of enjoyment of life;

    i. Mental anguish in the past;

    j. Mental anguish in the future;

    k. Loss of earnings in the past;

    l. Loss of earning capacity which will, in all probability, be incurred in the future; and

    m. Loss of benefits.

## **EXEMPLARY DAMAGES**

Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Gregory Scott Bills respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity

Respectfully submitted,

By: /s/ Renea Overstreet
Renea Overstreet
Texas Bar No. 24066704
E-Mail: rdolaw@gmail.com
2100 N. Main Street, Suite 228
Fort Worth, Texas 76164
Tel. (817) 810-9747
Fax. (1-855) 299-5593
Attorney for Plaintiff
Gregory Scott Bills

Dated; January 11, 2021