# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| GREGORY SCOTT BILLS, § | |
| § | |
| *Plaintiff,* § | Civil Action No. 4:21-CV-0024 |
| § | Judge Mazzant |
| v. § | |
| § | |
| WAL-MART STORES EAST LP, § | |
| § | |
| *Defendant.* § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Wal-Mart Stores East LP's ("Walmart") Rule 12(b)(6) Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Dkt. #4). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Gregory Scott Bills ("Bills") is a 56-year-old male who has worked as a truck driver for 39 years (Dkt. #1 ¶ 8). Bills started driving for Walmart Transportation #6868 in Sanger, Texas, on September 21, 2011 (Dkt. #1 ¶ 8). In 2018, Bills underwent rotator cuff surgeries to repair his shoulder. While on Family and Medical Leave Act ("FMLA") leave from Walmart, Walmart managers and human resources representatives told Bills that he would lose his job if he did not return to work (Dkt. #1 ¶ 9). Bills continued to provide his medical information to the human resources representatives while he was on leave and even personally paid for his insurance from January to June 2019, as directed by Walmart management, to maintain his position there (Dkt. #1 ¶ 10).

At the beginning of 2019, Bills' surgeon, Nicholas D. Iagulli, recommended a second shoulder surgery (Dkt. #1 ¶ 11). Bills informed Nina Menefee—a Human Resources representative with Walmart—that he needed the second surgery, and Bills claims Nina Menefee assured him that his job with Walmart was secure and he need not worry about losing his job because of his medical leave (Dkt. #1 ¶ 11). Contrary to Nina Menefee's statement, however, Cindy Forester in Human Resources told Bills that if he was on medical leave for over a year, Walmart would terminate his employment (Dkt. #1 ¶ 12).

About two weeks before he would have been on leave for a year, Bills' surgeon—Dr. Iagulli—released Bills to return to work without restrictions (Dkt. #1 ¶ 13). Walmart, however, sent Bills for a Walmart Department of Transportation ("DOT") physical in Denton, Texas, and claimed it was because he had high blood pressure (Dkt. #1 ¶ 13). The Walmart doctor in Denton asked Bills to return a few days later for another physical to re-check his blood pressure. After returning, Bills was told that he could not pass because he had sugar in his urine and that he should see his primary care physician to address this issue (Dkt. #1 ¶ 14).

Bills' primary care physician, Dr. Keith Harbour, told Bills that the sugar in his urine and high blood pressure were caused by stress and gave him a prescription to address the issue (Dkt. #1 ¶ 15). After being on the new medicine for a week, Bills went back to Denton to see the Walmart doctor for another physical (Dkt. #1 ¶ 15). During this visit, the Walmart doctor told Bills that his blood sugar was too high; therefore, Bills could not get a new DOT card and could not return to work (Dkt. #1 ¶ 16). Bills claims he was aware that DOT rules allowed him to drive if he were compliant with his medication even if he had diabetes, pre-diabetes, or some other issue (Dkt. #1 ¶ 17). However, according to Bills, the Walmart Doctor told him that he could not drive based on Walmart's policy, rather than DOT guidelines (Dkt. #1 ¶ 17). The Walmart doctor did

2

tell Bills that to continue taking his medications and come back for another physical in a week (Dkt. #1 ¶ 18). Suspicious that the Walmart doctor was coming up with different reasons to deny Bills a passing physical, Bills went to another primary care physician—Dr. David Chaves in Haltom City—who gave Bills a physical which he passed (Dkt. #1 ¶¶ 19–20).

Bills then called Kevin Dyer ("Dyer"), the regional manager for Walmart, and told him that he felt like he was getting the "run around" by the company doctors who kept finding a different medical basis or reason why he was not being cleared to drive again (Dkt. #1 ¶ 21). Bills also informed Dyer that Bills' personal doctors had released him to drive without restrictions, but Dyer informed Bills that he would have to go to the Walmart office to get a DOT physical pursuant to Walmart's medical clearance policy (Dkt. #1 ¶ 22).

Based on Dyer's instruction and not trusting the Walmart doctors in Denton, Bills set up another physical in Katy, Texas, at an approved Walmart DOT facility. Bills passed the physical in Katy (Dkt. #1 ¶ 24). With a passing physical in hand, Bills went back to Sanger and presented his medical results to his general manager, Ron McGriff ("McGriff"), and the safety manager. McGriff asked Bills who had authorized him to have his physical done in Katy and informed Bills that he could only go to the Walmart doctor in Denton (Dkt. #1 ¶ 25).

After an extended argument about whether Dyer authorized Bills to go to Katy for a physical, McGriff informed Bills that the form he had from Katy did not list his medications on it, which McGriff claimed was required for Walmart (Dkt. #1 ¶ 27). Bills pointed out that his medications were typed on the form at the bottom, but McGriff rebutted by saying the medications must be handwritten, not typed (Dkt. #1 ¶ 28). McGriff further told Bills he needed to drive back to Katy and get the physical paperwork redone and signed by the office in Katy—over 300 miles away from Sanger (Dkt. #1 ¶ 29).

Bills made it to Katy only to find that the lady who had done his physical paperwork was not in the office that day but would be in the Sugarland office the next day. The employee in Katy told Bills that he should go to Sugarland the next day to get the paperwork. On September 4, 2019, Bills went to Sugarland to find the lady that had done his physical paperwork (Dkt. #1 ¶ 32). Bills waited for four hours, but the lady never arrived, which he felt was not coincidental (Dkt. #1 ¶ 32). Bills ultimately talked with the a DOT compliance worker who then told him that he would have to come back another day "for the first compliance lady to give him the revised paperwork that [McGriff] had told him to obtain" (Dkt. #1 ¶ 34).

Bills then drove home to Haltom City. When Bills explained to McGriff what happened in Katy, McGriff told him that since he had failed the DOT physical two times, there was no need to get a third physical (Dkt. #1 ¶ 35). McGriff further said he could possibly find Bills another position with Walmart and that Bills had thirty days to decide (Dkt. #1 ¶ 35). According to Bills, McGriff categorically told Bills that he would never drive a truck for Walmart again (Dkt. #1 ¶ 35).

On September 13, 2019, Walmart terminated Bills for failure to timely return from leave (Dkt. #1 ¶ 40). Further, Bills even alleged that Walmart prevented him from getting another driving job with Martin Transportation and that younger drivers at Walmart were treated more favorably and scrutinized less than he was (Dkt. #1 ¶¶ 44, 46–47).

On January 12, 2021, Bills filed a complaint with this Court alleging a violations of the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Texas Commission of Human Rights Act ("TCHRA") in Chapter 21 of the Texas Labor Code, and a claim for intentional infliction of emotional distress (Dkt. #1). On February 10, 2021, Walmart filed this Motion to Dismiss alleging that Bills' intentional

infliction of emotional distress claim should be dismissed pursuant to Rule 12(b)(6) (Dkt. #4 at p. 1). Bills responded on March 3, 2021.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Wal-Mart moves for a dismissal of Bills' state-law intentional infliction of emotional distress claim, arguing that the claim is preempted by the TCHRA. Under Texas law, "a plaintiff may not bring an [intentional infliction of emotional distress] claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.,* 502 F.Supp.2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004)). Intentional infliction of emotional distress "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger,* 144 S.W.3d at 447). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id.* "[A] plaintiff cannot bring a claim for intentional infliction of emotional distress against a defendant where the plaintiff

6

could bring a state statutory claim or other tort claim against that defendant based on the same conduct alleged". *Rawlings v. Travelers Prop. Cas. Ins. Co.,* 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) (O'Connor, J.) (citing *Zeltwanger,* 144 S.W.3d at 441–51; *Creditwatch, Inc.,* 157 S.W.3d at 815–17).

After reviewing the Complaint, Motion, and Response, Bills has stated a plausible claim against Walmart upon which relief could be granted. Bills has distinguished the conduct that supports his intentional infliction of emotional distress claim. The facts supporting Bills' intentional infliction of emotional distress claim—having to get multiple physicals and having to drive back and forth to Katy to retrieve paperwork—are distinct from the facts supporting his wrongful termination claims. Accordingly, the Motion to Dismiss should be denied.

## CONCLUSION

It is therefore **ORDERED** Defendant's Rule 12(b)(6) Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (Dkt. #4) is hereby **DENIED.**

**SIGNED** this 20th day of April, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE