# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GREGORY SCOTT BILLS | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.  4:21-CV-00024 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| WAL-MART STORES EAST LP | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Wal-Mart Stores East LP ("Walmart")'s Motion for Summary Judgment (Dkt. #22).  Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED.**

## BACKGROUND

Plaintiff Gregory Scott Bills ("Bills") is a 56-year-old male who has worked as a truck driver for 39 years (Dkt. #1 ¶ 8).  On September 26, 2011, when Bills was forty-eight (48) years old, Walmart hired him as an Over the Road ("OTR") truck driver for the Walmart Distribution Center #6868 in Sanger, Texas (Dkt. #22 ¶ 4).  Because Walmart is an interstate transportation business, it is regulated by the U.S. Department of Transportation ("DOT") and the regulations set forth in the Federal Motor Carrier Safety Act ("FMCSA") (Dkt. #22 at p. 2).   Under these regulations, drivers must receive and pass regular DOT medical examinations that indicate they are physically capable of safely operating commercial motor vehicles (Dkt. #22 ¶ 5).  Accordingly, when Bills was hired, he was required to pass a medical exam and obtain a Medical Exam Certificate ("MEC") issued by a DOT certified physician (Dkt. #22 ¶ 4).

In 2018, Bills underwent rotator cuff surgeries to repair his shoulder (Dkt. #1 ¶ 9).  From July 19, 2018 through September 8, 2018, Bills was approved for an extended leave under the Family and Medical Leave Act ("FMLA") while he recovered (Dkt. #22 ¶ 7).  When Bills' FMLA leave expired on September 8, 2018, Walmart granted Bills an additional extended leave under Walmart's Personal Leave Policy (Dkt. #22 ¶ 8).  During this time, Bills was notified that unless he requested and was approved for an extension pursuant to Walmart's Leave of Absence Policy, the maximum length of leave allowed would be one-year (Dkt. #22 ¶ 10).

In June 2019, Bills requested another extension of his leave (Dkt. #22 ¶ 11).  At this time, Bills was advised by Sedgwick, Walmart's third-party administrator, that, since he had been out for over 52 weeks, he would need to submit his request for accommodation to Walmart's Accommodation Service Center ("ASC") (Dkt. #22 ¶ 11).  Three days later, Bills' physician submitted the required paperwork, which indicated that Bills could not drive due to his rotator cuff tear and needed an accommodation through July 19, 2019 (Dkt. #22 ¶ 11).  Sedgwick granted this accommodation request and extended Bills' leave through July 15, 2019 (Dkt. #22 ¶ 12). Subsequently, Bills submitted another request for accommodation, and Bills' leave was extended one more week—to July 22, 2019 (Dkt. #22 ¶ 12).

On July 22, 2019, Bills was released to return to work by his treating physician (Dkt. #22 ¶ 13).  Pursuant to Walmart's procedure regarding DOT drivers returning from an extended leave of absence, Bills was notified that, in order to return to work, he needed to get a new MEC (Dkt. #22 ¶ 13).  eScreen, Walmart's third-party administrator for DOT testing, scheduled a DOT exam at Minor Emergency of Denton the next day (Dkt. #22 ¶ 14).   However, Bills failed this exam because of elevated blood pressure and high blood sugar levels (Dkt. #22 ¶ 14).  His application for an MEC was thus denied (Dkt. #22 ¶ 14).

After he failed the DOT exam, Bills went to his Primary Care Physician ("PCP"), who conducted a diabetes screening (Dkt. #22 ¶ 15).  The screening included an Average Blood Sugar Test that showed Bills had an A1c level of 12.8, which was "consistent with diabetes"[1] (Dkt. #22 ¶ 15).  Subsequently, Bills returned to Minor Emergency of Denton for DOT exams twice, but failed both exams because of A1c levels (Dkt. #22 ¶ 15, 16).

On August 1, 2019, Bills submitted a new Americans with Disabilities Act ("ADA") accommodation request, seeking an accommodation due to Type II diabetes (Dkt. #22 ¶ 17).  Bills' PCP provided that Bills was "unable to drive a commercial vehicle until A1c is under 10" and that no return-to-work date was anticipated (Dkt. #22 ¶ 14).  The next day, Bills went to his PCP in Haltom City (not a Walmart-approved physician) for a DOT medical examination and was issued a four-month MEC (Dkt. #22 ¶ 18).  However, during this exam, Bills did not disclose that he had previously failed recent DOT exams or that his A1c was at 12.8 (Dkt. #22 ¶ 18).

After Walmart became aware of Bills' efforts to change physicians, eScreen scheduled another exam for Bills with his original DOT physician at Minor Emergency of Denton (Dkt. #22 ¶ 19).  Again, Bills failed this exam (Dkt. #22 ¶ 19).  During this same time period, because of Bills' continued efforts to obtain an MEC and his ongoing failed and inconsistent mandatory DOT exams, ASC determined that Bills' Request for Accommodation would need to be escalated for further review (Dkt. #22 ¶ 21).  ASC ultimately concluded that if Bills was unable to properly pass a DOT exam, it would have to assess whether he would be eligible for job reassignment (Dkt. #22 ¶ 21).

After Bills failed his fourth exam, he alleges that he received permission from Kevin Dyer, the Regional Manager for Walmart, to go to the Walmart DOT physician in Katy, Texas (Dkt. #1

---

[1] According to Bio Reference Laboratory, an A1c over 6.5 is "consistent with diabetes" (Dkt. #22, Exhibit 1 at p. 143).

¶ 22).  Bills passed this physical examination and received a 90-day DOT card (Dkt. #1 ¶ 4).  After being notified that Bills had once again received an unapproved DOT exam, Walmart sought guidance from eScreen on how to address the conflicting exam results (Dkt. #22 ¶ 22).  It was concluded that an independent third-party Medical Review Officer ("MRO") at eScreen would review all of Bills' DOT exam results to determine whether he was actually medically certified to drive (Dkt. #22 ¶ 22).  After a review, the MRO determined that Bills had not disclosed to the Katy physician that he had failed other DOT exams and had failed to provide his full medical history (Dkt. #22 ¶ 23).  Bills was instructed to return to the Katy physician and this time fully disclose everything (Dkt. #22 ¶ 23).  Bills attempted to return to Katy, but he never obtained the revised paperwork that eScreen told him to get (Dkt. #1 ¶ 34).  Further, Bills did not file an application with the DOT to resolve any concerns he had about the alleged conflicting exams (Dkt. #22 ¶ 25).

After failing to obtain the proper paperwork from the Katy DOT physician, Bills called Ron McGriff, his general manager, to explain what happened and why he was unsuccessful in getting the paperwork (Dkt. #1 ¶ 35).  During this conversation, Bills alleges that McGriff told him that since he had failed the DOT physical multiple times, there was no need to get a third physical (Dkt. #1 ¶ 35).  McGriff further said he could possibly find Bills another position with Walmart and that Bills had thirty days to decide (Dkt. #1 ¶ 35).  According to Bills, McGriff categorically told Bills that he would never drive a truck for Walmart again (Dkt. #1 ¶ 35).

On September 13, 2019, as a result of a refusal to comply with the eScreen MRO instructions to obtain an updated exam at the Katy location, not communicating with the ASC, and his leave of absence having expired on July 22, 2019, Walmart terminated Bills for failing to return to work after a leave of absence (Dkt. #22 ¶ 26).  Further, according to Bills, Walmart also

prevented him from getting another driving job with Martin Transportation after he was terminated (Dkt. #1 ¶¶ 44).

On January 12, 2021, Bills filed his complaint, asserting claims against Walmart for violations of the ADA, the Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Texas Commission of Human Rights Act ("TCHRA") (Dkt. #1).  Additionally, Bills' complaint alleges a supplemental claim under Texas law for intentional infliction of emotional distress ("IIED") (Dkt. #1).  On November 15, 2021, Walmart filed its motion for summary judgment, contending that summary judgment is warranted on all of Bills' claims (Dkt. #22).  On December 6, 2021, Bills filed his response, (Dkt. #23), and Walmart filed its reply 10 days later (Dkt. #27).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material.  *Id.*  The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Walmart moves for summary judgment on each of Bills' claims. First, Walmart asserts it is entitled to summary judgment on Bills' disability discrimination claims under the ADA and

TCHRA because Bills can neither establish a *prima facie* case nor show that Walmart's legitimate reason for Bills' termination is pretextual (Dkt. #22 at p. 4).  For those same reasons, Walmart claims it is entitled to summary judgment on Bills' age discrimination claims under the ADEA and TCHRA (Dkt. #22 at p. 4).  Third, Walmart asserts Bills' Title VII claims fails because Title VII does not prohibit discrimination for age and disability (Dkt. #22 at p. 4).  Fourth, Walmart argues any purported retaliation claim of Bills' fails because Bills did not exhaust his administrative remedies and nevertheless cannot establish a *prima facie* case of retaliation (Dkt. #22 at p. 24).  And, finally, Walmart contends it is entitled to summary judgment on Bills' IIED claim because it is premised on the same alleged conduct as his other statutory claims (Dkt. #22 at p. 29).

In response to Walmart's thorough motion for summary judgment, Bills submitted a 13-page response equipped with no attachments of evidentiary support (Dkt. #23).  Further, Bills' response does not address large parts of Walmart's motion and offers scant legal authority in support of his positions.  Nevertheless, the Court turns to the merits of Bills' claims, viewing the evidence in the light most favorable to Bills.

## I.       Disability Discrimination Claims

Bills contends that Walmart terminated him because he was diagnosed with diabetes, a disability under the ADA (Dkt. #23 at p. 5).  Accordingly, Bills asserts claims for disability discrimination under the TCHRA and ADA.[2]

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A plaintiff may prove "a claim

---

[2] "Because TCHRA 'parallels the language of the [ADA]', Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cty. Coll. Dist*., 717 F. App'x 440, 444–45 (5th Cir. 2018).  The following ADA analysis therefore applies equally to the TCHRA.

of disability discrimination by presenting direct evidence of discrimination." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir. 1996).  Absent direct evidence of discriminatory intent, as is typically the case, proof can be established with circumstantial evidence, using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Taylor*, 93 F.3d at 162; *see also Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Under the *McDonnell Douglas* analysis, a plaintiff must first establish a *prima facie* case of unlawful disability discrimination. *Taylor*, 93 F.3d at 162; *see also Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003). "Once the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Gowesky*, 321 F3d at 511 (quoting *McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000)). If the employer successfully articulates a legitimate non-discriminatory reason for the adverse employment action, "the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id.*

Walmart argues that Bills cannot satisfy the *McDonnell Douglas* burden-shifting framework for two reasons: (1) he cannot establish a *prima facie* case under the ADA, and (2) he cannot show that Walmart's reason was a pretext for unlawful discrimination (Dkt. #22 at p. 19). In response, Bills argues he does not have to satisfy the *McDonnell Douglas* framework because he has direct evidence of discrimination—a statement from Ron McGriff (Dkt. #23 at p. 5).  The Court therefore examines whether McGriff's statement constitutes direct evidence of disability discrimination, and, if so, whether this evidence relieves Bills from the *McDonnell Douglas* framework.

## A.  Direct Evidence

"[D]irect evidence is rare." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994).  By definition, "[d]irect evidence of discrimination . . . prove[s] the existence of a fact . . . without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc*., 5 F.3d 955, 958 (5th Cir. 1993).  For example, "[a] statement or document which shows 'on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination.'" *Herster v. Bd. of Supervisors of La. State Univ*., 887 F.3d 177, 185 (5th Cir. 2018) (quoting *Jones v. Robinson Prop. Grp., L.P*., 427 F.3d 987, 993 (5th Cir. 2005)).  Further, "[w]here a plaintiff offers remarks as direct evidence, [the Court] appl[ies] a four-part test to determine whether they are sufficient to overcome summary judgment." *Reed v. Neopost USA, Inc*., 701 F.3d 434, 441 (5th Cir.2012) (*citing Brown v. CSC Logic, Inc*., 82 F.3d 651, 655 (5th Cir.1996)).  Under this test, to qualify as direct evidence of discrimination, the comments "must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the termination; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Auguster v. Vermilion Par. Sch. Bd*., 249 F.3d 400, 405 (5th Cir.2001) (alterations in original) (quoting *Krystek v. Univ. of S. Miss*., 164 F.3d 251, 256 (5th Cir.1999)).

Bills asserts that McGriff's statement, "I'll give you a month to get everything taken care of and then come back to work but you won't drive a truck again," is direct evidence of discrimination against Bills on the basis of his disability (Dkt. #23 at p. 5 (citing Dkt. #22, Exhibit 1 at p. 37).  More specifically, Bills alleges that McGriff told him this after he had been diagnosed with diabetes and failed the DOT physical numerous times (Dkt. #22, Exhibit 1 at p. 36).  During this conversation, McGriff also told Bills that Walmart would work with him on reassignment to

another position once Bills "g[o]t everything taken care of" and returned to work (Dkt. #22, Exhibit 1 at p. 37).

The Court finds that the isolated statement by McGriff does not constitute direct evidence. The Court finds *Clark v. Champion National Security, Inc*. 952 F.3d 570 (5th Cir. 2020) to be instructive.  There, the Court found that a statement similar to the one made by McGriff was not direct evidence of disability discrimination and even characterized it as "a far cry" from direct evidence found in previous cases. *Id.* at 580–81.  In *Clark*, the plaintiff, who suffered from diabetes, argued that the statement, "perfect . . . let him go," by the Vice President after he received a picture of the plaintiff not awake at his desk during business hours was direct evidence of discrimination.  *Id.* at 581.  In finding the statement was not direct evidence, the Court noted, "[T]here's nothing in the email with the picture or [] response about [the plaintiff]'s disability. . . [So], problematically, accepting the statement as direct evidence would require an inference." *Id.* Similarly, here, McGriff's statement contains no reference to Bills' disability and, therefore, accepting the statement as direct evidence would require an inference. *See id.*  Yet, by definition, direct evidence proves a fact without any inference. *Bodenheimer*, 5 F.3d at 958.  Accordingly, McGriff's statement cannot be direct evidence.

The Court's conclusion is strengthened after comparing McGriff's statement to other statements that the Fifth Circuit has considered to be direct evidence of discrimination. *See Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 474 (5th Cir. 2015); *Jones*, 427 F.3d at 993; *Portis*, 34 F.3d at 329.  In *Portis*, the Court found that a supervisor's statements that an employee "wouldn't be worth as much as the men would be to the bank" and "she would be paid less *because she was a woman*" constituted direct evidence of discrimination." 34 F.3d at 329–31. Similarly, in *Etienne*, the Court held that an employee's manager's statements that he did not allow

"dark skin black person[s] [to] handle any money at" the casino and that he "thought [the employee] was too black to do various tasks at the casino" constituted direct evidence of race discrimination. 778 F.3d 473, 474–76. And, in *Jones*, the Court found that a manger's statements that "the[y] were not going to hire a black person unless there were extenuating circumstances" and "good old white boys don't want blacks touching their cards in their face" were direct evidence of discrimination. 427 F.3d at 993. Simply put, the statements in these cases stand in stark contrast to McGriff's statement.

To be sure, the Court finds McGriff's statement more akin to the statement in *Clark* and less like the statements in *Portis*, *Jones*, and *Etienne*. For example, like the statement in *Clark*, McGriff's statement does not directly or expressly link Bills' disability to a decisionmaker's choice to terminate him. *See* 952 F.3d at 580. Further, accepting McGriff's statement as direct evidence of discrimination would require an inference—that Bills "wouldn't drive a truck again" because of his diabetes diagnosis. Moreover, unlike the other statements in the cases that found direct evidence of discrimination, here, McGriff's statement does not include an explicit reference to a forbidden factor (sex, race, or disability). Thus, because Bills failed to provide direct evidence of discrimination, he must meet the *McDonnell Douglas* burden-shifting framework for his claim to survive summary judgment. The Court turns to this analysis.

### B.  *McDonnell Douglas* Burden Shifting Framework

Absent direct evidence of discrimination, courts apply the burden-shifting framework from *McDonnell Douglas* to analyze discrimination claims under the ADA. *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014), *Whitley v. Dr. Pepper Snapple Grp., Inc.*, No. 4:16-cv-362, 2017 WL 1739917, at *3 (E.D. Tex. May 4, 2017). Accordingly, Bills can survive summary judgment if he can make a *prima facie* showing of discrimination by demonstrating that (1) he has

a disability or is regarded as having a disability; (2) he is qualified for his job, and (3) he was subjected to an adverse employment action on account of his disability. *LHC Grp., Inc.*, 773 F.3d at 697; *Whitley*, 2017 WL 1739917, at \*3; *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 324 (5th Cir. 2020).  While the plaintiff's burden at this stage "is not onerous," if each of the elements are not met, the plaintiff's claim fails. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012).  However, "[if] a plaintiff establishes a *prima facie* showing of discrimination, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Whitley*, 2017 WL 1739917, at \*3 (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226–27 (5th Cir. 2015)).  "The burden then shifts to the plaintiff to show the articulated reason is pretextual." *Id.*

In its motion for summary judgment, Walmart argues summary judgment is proper because Bills can neither satisfy the elements of a *prima facie* case of discrimination under the ADA nor show that Walmart's reason for Bills' termination is pretext (Dkt. #22 at p. 4).  Specifically, in regard to the *prima facie* case, Walmart argues Bills cannot meet the second and third elements because the evidence establishes that Bills was not qualified for his position and that he was not terminated because of a disability, whether perceived or actual (Dkt. #22 at p. 19).[3]  Accordingly, the Court turns its focus to whether Bills has met the second prong of his *prima facie* case—whether he has shown he was "qualified" for the job.

### i.    *Prima Facie* Case—Whether Bills Was Qualified for the Job

---

[3] In Bills' complaint, he alleges both that he was disabled and that Walmart perceived him as disabled (Dkt. #1).  For purposes of the summary judgment motion, the only difference in Bills' actual disability and perceived disability claim is that the first element of the *prima facie* case is different. Walmart does not challenge whether Bills can meet this element.  Further, because Bills fails to meet the second element—which applies to both Bills' actual and perceived disability claims—the Court does not need to analyze his actual disability and perceived disability claims separately.

The Fifth Circuit has adopted a two-part test to determine if an employee is qualified. *Gober v. Frankel Family Tr*., 537 F. App'x 518, 521 (5th Cir. 2013).   A plaintiff will avoid summary judgment on this point if he can show "(1) that he could perform the essential functions of the job in spite of his disability or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." *Id.*   Thus, in determining whether a plaintiff is a qualified individual with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job he holds. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993).   If the Court concludes that the plaintiff is not able to perform the essential functions of the job, the Court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Id*. at 1394– 95.

When Walmart hired Bills in September 2011, Bills affirmed that he had read and understood Walmart's company policies, which require that drivers "[m]eet all medical and safety standards required by the DOT" (Dkt. #22, Exhibit 1, pp. 3-4, 60-62, 63-68).   The DOT policies reflect federal regulations prohibiting any person from "driv[ing] a commercial motor vehicle unless he[] is qualified." 49 C.F.R. § 391.11.   To be "physically qualified," a driver must meet certain "physical qualification standards" and also "compl[y] with the medical examination requirements in § 391.43." *See id*. at § 391.41(a)(3)(i).   If a driver completes these requirements, the driver obtains a MEC issued by a DOT certified physician.   In accordance with Walmart's policy pertaining to drivers returning from an extended leave of absence, Bills was required to get a new MEC in order to return to work (Dkt. #22, Exhibit 4 ¶ 9).   But, according to Walmart, he could not pass the required DOT exam because of his diabetes (Dkt. #22 at p. 2).

Consequently, Walmart argues that because Bills "could not pass the required DOT exam, he was no longer qualified as a matter of federal regulation to operate a commercial vehicle" (Dkt. #22 at p. 2).  As evidence that Bills was unqualified to return, Walmart points to Bills' "repeated inability to obtain a proper MEC (Dkt. #22 at p. 20).  Walmart also points out that Bill's PCP stated that "Bills was unable to drive a commercial vehicle until A1c is under 10" and indicated that no return-to-work date for Bills was anticipated (Dkt. #22, Exhibit 1 at p. 173).  Thus, according to Walmart, this evidence proves that Bills was not medically qualified to drive a commercial vehicle and, therefore, could not perform the essential functions of the position.

Bills does not attempt to refute most of Walmart's arguments or probative evidence on the subject or point to any contrary law.  Instead, Bills argues there is a fact issue because the parties dispute the effect of the Walmart DOT exam that Bills took in Katy (Dkt. #23 at p. 5).  Further, Bills argues the real reason that he was terminated could not have been his failure to pass *a* medical exam because he did pass a medical exam—the Katy one (Dkt. #23 at p. 5).  In response, Walmart contends the Katy test was not an "approved" DOT exam and Bills failed to disclose important information to the Katy physician (Dkt. #22, Exhibit 4 ¶ 19).  Ultimately, Bills' focus on the Katy test is misplaced, and the parties' dispute over this matter is inconsequential to the Court's analysis. Although the plaintiff's burden at this stage "is not onerous," Bills has failed to meet it. *See Mission Consol*, 372 S.W.3d at 633–34.

Whether Bills actually "passed" the Katy test is not the critical question—the critical question is what Bills did after he received allegedly conflicting exams.  The Fifth Circuit and other courts have held that a driver's ADA claim fails when, as here, a "doctor found the plaintiff medically unqualified and the plaintiff did not obtain a contrary opinion through the DOT's administrative process." *Williams v. J.B. Hunt Transport, Inc*., 826 F.3d 806, 811 (5th Cir. 2016);

*see also Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637–39 (8th Cir. 2003); *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 973–76 (7th Cir. 2000). Thus, what is vital in the wake of conflicting medical tests is the plaintiff's next step—whether the plaintiff files an application with the DOT to resolve any conflict between medical evaluations pursuant to § 391.47. *See* 49 C.F.R. § 391.47. And, here, Bills has produced no evidence that he did so. Thus, even if Bills could show that the Katy test was compliant and he passed it, the outcome would not change. Bills admitted that he failed multiple DOT medical exams (Dkt. #23 at p. 3). And when "a doctor f[inds] the plaintiff medically unqualified and the plaintiff does not obtain a contrary opinion through the DOT's administrative process," the plaintiff cannot establish a *prima facie* case under the ADA. *Williams*, 826 F.3d at 811. Thus, even with inconsistent physician opinions and MECs in the record, Bills' failure to put forth any evidence showing that he attempted to obtain a contrary opinion through the DOT's administrative process is fatal to his claim. As such, Bills has failed to create a genuine issue of material fact.

Since Bills has failed to show that he could perform the essential functions of the job in spite of his disability, the Court next considers whether a reasonable accommodation would have enabled Bills to perform the essential functions of his job. *See Gober*, 537 F. App'x at 521. Bills makes two arguments that arguably address whether a reasonable accommodation would have allowed him to perform the essential functions of his job.[4] First, Bills generally contends that he

---

[4] The Court notes that a failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment. *Windhauser v. Bd. of Supervisors for La. State Univ. & Agric. & Mech. Coll.*, 360 Fed. App'x. 562, 565 (5th Cir. 2010). The main distinction is that "[a] failure-to-accommodate claim provides a mechanism to combat workplace discrimination even when the employee in question has not suffered adverse employment action." *Id.*; *see also Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 71 (5th Cir. 2001) (unpub.) ("Although Bridges has suffered no adverse employment action, she may still raise a claim of discrimination based on the alleged failure reasonably to accommodate her disability."). Here, Bills failed to plead a failure-to-accommodate claim in his complaint (Dkt. #1). Thus, the Court assumes any arguments that Bills makes regarding reasonable accommodations pertain to the second prong of his discriminatory-discharge action. In this context, issues regarding whether Walmart could reasonably accommodate Bills' disability remain relevant to the qualification element of the discriminatory-termination analysis.

"should have been eligible for a job reassignment if he was not able to drive a truck for Walmart" (Dkt. #23 at p. 10).  Second, Bills argues he "should have been given time to get his diabetes under control through the medicine he was prescribed or through other means" (Dkt. #23 at p. 12).  The Court finds these arguments unavailing.

First, Bills' suggestion that he should have "been eligible for a job reassignment" if he could not drive a truck is not supported by the law.  The ADA requires employers to make "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position . . . ." 29 C.F.R. § 1630.2(o)(1)(ii). However, "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (holding employer was not required to accommodate firefighter who could not fight fires); *see also Barber v. Nabors Drilling U.S.A., Inc*., 130 F.3d 702, 709 (5th Cir.1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."). Thus, Bills' contention that the law required Walmart to accommodate him by relieving him of the essential duties of his current job and reassigning him to another job lacks merit.

Notwithstanding that defect, his failure to offer any evidence on the matter also means he cannot prevail.  Indeed, "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to

be reasonable, it is clear that a position must first exist and be vacant.").  In short, Bills has offered no evidence upon which a reasonable jury could find that he is entitled to the accommodation sought—job reassignment.

Second, Bills' argument that he "should have been given time to get his diabetes under control" also lacks merit. That Bills' contention for more time is meritless is highlighted by the fact that Bills does not specify how much more time Walmart should have given him on leave to accommodate him.  Numerous courts, including the Fifth Circuit, have held that an employee is not entitled to leave as a reasonable accommodation if the duration is excessive or unknown. *See Silva v. City of Hidalgo, Tex.*, 575 F. App'x 419, 423–24 (5th Cir. 2014) (non-precedential) (collecting cases) (holding that it would be unreasonable for employer to have to wait "at least one or two months" beyond FMLA exhaustion for employee to return to work); *Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kan.*, 691 F.3d 1211, 1218–19 (10th Cir. 2012) (finding accommodation unreasonable as a matter of law when employer did not have a reasonable estimate of when employee would be able to resume all essential functions of her employment); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d. Cir. 2000) ("The duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position indefinitely while the employee attempts to recover . . . .").

When Bills submitted his accommodation request, he never specified or even estimated how much time he would need for leave due to his diabetes diagnosis (Dkt. #22, Exhibit 1 at p. 173).  In fact, in support of his request for medical leave, his physician checked the box that no return date was anticipated (Dkt. #22, Exhibit 1 at p. 173).  Thus, with no estimate in hand of when Bills could resume his job duties, Walmart had no obligation to grant Bills indefinite leave.  Indeed, "[r]easonable accommodation does not require an employer to wait indefinitely for the employee's

medical conditions to be corrected." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 760 (5th Cir. 1996) (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995)) (alterations omitted); *see also Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (same).  Thus, Bills fails to show that a reasonable accommodation would have allowed him to perform his job.

Accordingly, because Bills has failed to show that he was qualified for his position—with or without reasonable accommodation—Bills has not met his burden to establish a *prima facie* case of discrimination under the ADA.[5]

### ii.    Legitimate, Nondiscriminatory Reason and Pretext

Even if Bills had established a *prima facie* case of discrimination, the Court finds that Walmart has articulated a legitimate, non-discriminatory reason for his discharge.  Indeed, Walmart's summary judgment evidence shows that Bills' employment was terminated due to his failure to comply with DOT certification requirements (Dkt. #22, Exhibit 4 at p. 7).  Since Walmart offered a legitimate reason, the burden of production shifts to Bills to show that Walmart's proffered reason was pretext for discrimination.  However, Bills falls woefully short of discharging his burden to demonstrate pretext.

"Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).  Here, while Bills disputes Walmart's reason for firing him, Bills' disagreement with the requirement that he obtain a fully compliant MEC is insufficient to overcome summary judgment.  The fact remains that Bills has presented zero evidence to support any contention that Walmart's reasons for terminating him were anything other than legitimate

---

[5] The Court need not reach Walmart's other argument contending that Bills has not shown he was terminated because of a disability because Bills' failure to show he was qualified means he cannot establish a *prima facie* case.

and in accordance with company policy.  Further, though Bills contends that McGriff found excuses to not accept his Katy test, this argument is insufficient to overcome summary judgment. Indeed, the relevant question is not whether the employer made the correct decision, but whether "the decision was made with discriminatory motive." *Ward v. Gray Television Grp. Inc.*, 787 F. App'x 850, 851 (5th Cir. 2019) (per curiam) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).  And Bills has not produced any evidence indicating that Walmart's decision to terminate him was made with discriminatory motive.  Therefore, Bills' disability discrimination claims fail as a matter of law, and summary judgment is appropriate.  The Court will now address the merits of Bills' age discrimination claim.

## II.    Age Discrimination Claims

Bills brought age discrimination claims under the ADEA, TCHRA, and Title VII.  The Court will first address Bills' claims under the ADEA and TCHRA, [6] then will turn to his claim under Title VII.

### A.  Age Discrimination Claims Under the ADEA and TCHRA

In his complaint, Bills asserts that Walmart terminated him because of his age in violation of the ADEA and TCHRA (Dkt. #1).  However, in his response to Walmart's motion for summary judgment, Bills only mentions age once (Dkt. #23 at p. 6).  For example, after discussing McGriff's statement, Bills argues one could easily conclude that Walmart's "real reasons for terminating Plaintiff were because he was disabled with diabetes, *was older*, and Walmart was retaliating against him . . . ." (Dkt. #23 at p. 6) (emphasis added).  So, like most of Walmart's other arguments, he fails to wholly address Walmart's arguments regarding the merits of his age-discrimination

---

[6] As mentioned, claims under the TCHRA are analyzed under the same framework as the analogous federal statutes. *See Reed,* 701 F.3d at 439 (quoting *Mission Consol*, 372 S.W.3d at 633–34).  Thus, the analytical framework for Bills' ADEA claim applies equally to his TCHRA claim, except otherwise noted.

claim.  Indeed, Bills fails to contest Walmart's assertion that he cannot establish the fourth element of his *prima facie* case of age discrimination—an essential element to his age discrimination claim. Thus, because Bills did not sufficiently defend his age discrimination claims, the Court considers these claims abandoned. *See, e.g., Arias v. Wells Fargo Bank, N.A*., No. 3:18-cv-418, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a . . . summary judgment motion, the claim is deemed abandoned.") (citations omitted).

But even without abandonment, the claims nevertheless fail.  The ADEA and TCHRA prohibit employers from discharging or otherwise discriminating against an individual because of his or her age. *McClaren v. Morrison Mgmt. Specialists, Inc*., 420 F.3d 457, 461 (5th Cir. 2005). As with his disability discrimination claim, Bills can establish his age discrimination case through direct or circumstantial evidence. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus.  If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas* guides the inquiry.

### 1.  Direct Evidence

Because Bills argues McGriff's statement shows he was terminated because of his "older" age, the Court will construe this as an argument that McGriff's statement constitutes direct evidence of age discrimination.  Like with direct evidence of disability discrimination, for McGriff's statement to be considered direct evidence of age discrimination, it must "be direct and unambiguous, allowing a reasonable jury to conclude without any inference or presumptions that age was an impermissible factor in the decision to terminate the employee." *Equal Employment*

*Opportunity Comm'n v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).  Specifically, the statement "must be 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *McMichael v. Transocean Offshore Deepwater Drilling, Inc*., 934 F.3d 447, 457 (5th Cir. 2019) (internal quotations omitted).  Statements must meet a demanding standard because the plaintiff is relying upon them "to prove the entire case of discrimination." *Goudeau v. Nat'l Oilwell Varco*, L.P., 793 F.3d 470, 475 (5th Cir. 2015).  Further, the Fifth Circuit has held that "stray remarks" do not demonstrate age discrimination. *Tex. Instruments Inc*., 100 F.3d at 1181 (5th Cir. 1996); *see also, e.g., Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (a statement by a decisionmaker that an employee was an "old fart" and that a younger person could complete his work faster was a stray remark insufficient to establish age discrimination); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378-79 (5th Cir. 1991) (holding that such "statements are too vague to be accepted as direct evidence of age-bias."), *cert. denied*, 503 U.S. 908 (1992); *Turner v. N.A. Rubber, Inc*., 979 F.2d 55, 59 (5th Cir. 1992) (vague and remote remarks cannot establish age discrimination).

Thus, an instant glance at the law reveals that McGriff's statement does not come close to "prov[ing] the entire case of discrimination." *Goudeau*, 793 F.3d 475.  The statement does not mention Bills' age or evince any bias as it relates to age at all.  And, to conclude that Bills was terminated because of his age based on this statement would require many inferential steps.  Accordingly, the Court finds that McGriff's statement is not direct evidence of age discrimination. The Court will now consider whether Bills has sufficient circumstantial evidence to meet the *McDonnell Douglas* burden-shifting framework and overcome summary judgment on his age discrimination claims.

### 2. *McDonnell Douglas* Burden-Shifting Framework

Where, as here, the plaintiff cannot prove his age discrimination claim with direct evidence, he must rely on indirect evidence. *McMichael*, 934 F.3d at 456.  When analyzing indirect evidence, courts use the *McDonnell Douglas* burden-shifting framework.  Thus, Bills must first establish a *prima facie* case of discrimination by showing that he was (1) discharged; (2) qualified for the position; (3) within the protected class; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Armendariz*, 58 F.3d at 149.  Walmart argues that Bills' *prima facie* case fails with respect to the fourth element—that Bills cannot show he was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of his age (Dkt. #22 at p. 17).  The Court agrees.

### i. *Prima Facie* Case

First, Bills fails to offer any evidence that he was replaced by someone younger or someone outside the protected class.  Indeed, the evidence actually shows that Walmart employed a significant number of people over the age of 40 as OTR drivers.  For example, Walmart introduced evidence that about ninety percent of the OTR drivers at DC #6868 between March 5, 2020 and August 2020 were over the age of 40 (Dkt. #22, Exhibit 4).  Further, in the two weeks following Bills' termination, eight of the ten OTR drivers hired by DC #6868 were over the age of 40 (Dkt. #22, Exhibit 4).  Thus, the evidence does not support Bills' allegations.

Bills has also failed to establish that he was otherwise discharged because of his age. Beyond McGriff's comment, Bills has not pointed to any other circumstantial evidence of age discrimination.  For McGriff's statement to provide circumstantial evidence of age discrimination,

"the plaintiff must show that the comments involve '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" *McMichael*, 934 F.3d at 457–58 (quoting *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015)).  Courts apply this less demanding standard in indirect evidence cases because "the discriminatory remarks are just one ingredient in the overall evidentiary mix." *Goudeau*, 793 F.3d at 475.  But even under this less demanding standard, McGriff's comment is insufficient because it reflects no animus towards Bills on account of his age.

That McGriff's statement expresses no animus towards Bills on account of his age is evident by looking the typical statements that courts find to be circumstantial evidence of age discrimination.  For example, "courts will find evidence of age discrimination where a statement references age in a derogatory or stereotypical way." *McMichael*, 934 F.3d at 458; *see, e.g., Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 315 (5th Cir. 2004) (finding evidence of age discrimination where the employer told the plaintiff "you're too old").  Additionally, "courts will find evidence of age discrimination where the employer's statement shows a desire to replace older employees with younger ones." *McMichael*, 934 F.3d at 459*; see, e.g., Palasota v. Haggar Clothing Co*., 342 F.3d 569, 576–78 (5th Cir. 2003) (finding sufficient evidence to sustain a jury verdict where the employer stated that the plaintiff's "sales techniques were out of the 'old school' of selling"; commented that "there was a 'graying of the sales force'" and the employer needed "to find a way to get through it;" and recommended severance packages for fourteen named employees, all of whom were specifically identified as over fifty years of age, to create "the flexibility to bring on some new players"), *cert. denied*, 540 U.S. 1184 (2004).  Neither situation is present in this case. McGriff's statement does not reference age at all—much less in a derogatory or stereotypical

way—or show a desire to replace Bills with younger employees.  Therefore, Bills fails to show that this comment demonstrates discriminatory animus.

In sum, beyond the allegations in Bills' complaint that he was treated differently because of his age—along with other older drivers at Walmart—Bills fails to point to any competent summary judgment evidence that he was replaced by someone younger or was otherwise discharged because of his age.  "[S]tanding alone, a subjective belief of discrimination, no matter how strongly or genuinely felt, cannot support a claim of discrimination." *Gunner v. Chevron U.S.A., Inc.*, 684 F. Supp. 916, 919 (E.D. Tex. 1988).  Moreover, conclusory allegations and unsupported speculation are not competent summary judgment evidence and are thus insufficient to defeat a summary judgment motion. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  For these reasons, the Court finds that Bills fails to put forth a *prima facie* case of age discrimination.

### ii.      Legitimate, Nondiscriminatory Reason and Pretext

Again, even if Bills had established a *prima facie* case of age discrimination, the Court finds that Walmart has articulated a legitimate, non-discriminatory reason for his discharge. Indeed, Walmart's summary judgment evidence shows that Bills' employment was terminated due to his failure to comply with DOT certification requirements (Dkt. #22, Exhibit 4 at p. 7).  Since Walmart offered a legitimate reason, the burden of production shifts to Bills to show that Walmart's proffered reason was pretext for discrimination.  As with his disability discrimination claim, Bills has presented no evidence of pretext. [7]

---

[7] While the Court notes that the ADEA and TCHRA provide different standards under the pretext stage of the *McDonnell Douglas* analysis, the Court finds it unnecessary to delve into these distinctions because Bills fails to meet both. *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) ("The third step of the *McDonnell Douglas* analysis involves a different causation inquiry under the ADEA and the TCHRA.") (citing *Reed*, 701 F.3d at 440)).

"Pretext is established 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003)). Here, while Bills disputes Walmart's reason for firing him, Bills' disagreement with the requirement that he obtain a fully compliant MEC is insufficient to overcome summary judgment. The fact remains that Bills has presented zero evidence to support any contention that Walmart's reasons for terminating him were anything other than legitimate and in accordance with company policy. Indeed, Bills' inability to identify even a single instance where anyone at Walmart treated him less favorably than younger associates underscores that summary judgment is appropriate in this instance (Dkt. #22, Exhibit 1, pp. 38–41). Accordingly, Walmart is entitled to summary judgment on Bills' ADEA and TCHRA age discrimination claims. The Court will now turn to Bills' Title VII age discrimination claim.

### B. Age Discrimination Claim Under Title VII

In his complaint, Bills also asserts a claim for age discrimination under Title VII (Dkt. #1 at p. 8). However, Title VII does not prohibit discrimination because of an individual's age. *See Evans v. Tex. Dept. of Transp.*, 547 F. Supp. 2d 626, 636–37 (E.D. Tex. 2007) ("Title VII provides that '[i]t shall be an unlawful employment practice for an employee . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"). Thus, because Title VII does not prohibit age discrimination, the Court finds summary judgment is warranted on Bills' Title VII age discrimination claim. The Court now turns to Bills' retaliation claims under the ADEA and ADA.

### III.    Retaliation Claims under the ADEA and ADA

Although Bills did not specifically include a retaliation claim as a separate count in his complaint or administrative charge, his complaint does allege that he was "retaliated against by Walmart in that Walmart told Martin Transportation that Scott went on a leave of absence and never returned to work" (Dkt. #22 ¶ 44).  Further, in his response, Bills asserts that he "would not disavow" a retaliation claim (Dkt. #23 at p. 7).  Accordingly, because Bills' complaint contains retaliation allegations and Walmart moves for summary judgment on any purported retaliation claim, the Court will address the merits of Bills' retaliation claim. *See Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 854 (5th Cir. 2018) ("It bears emphasizing that factual allegations alone may state a claim for relief—even without referencing the precise legal theory (or statute) upon which the plaintiff seeks relief.").

Walmart argues summary judgment on Bills' purported claim of retaliation is warranted for two reasons (Dkt. #22 at p. 24).  First, Walmart argues that Bills' retaliation claim fails because Bills did not exhaust his administrative remedies (Dkt. #22 at p. 24).  Second, Walmart contends that Bills cannot establish a *prima facie* case of retaliation. (Dkt. #22 at p. 26).  More specifically, Walmart argues that Bills cannot establish the second or third prongs of the *prima facie* case—an adverse employment action and a causal connection between the protected act and the alleged adverse action (Dkt. #22 at p. 26).  Like the rest of Walmart's arguments, Bills does not address these arguments head-on.  The Court finds that summary judgment is warranted as to any purported retaliation claim.

First, the Court agrees that Bills failed to exhaust his administrative remedies.  It is well-settled that before a plaintiff can bring an action in federal court alleging retaliation, he must first exhaust available administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).  Exhaustion occurs when a plaintiff files a timely charge with the EEOC and

receives a statutory right-to-sue notice. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996).  If an employee neither checks the box for retaliation nor describes facts that would support retaliation on the EEOC charge form document, he fails to exhaust his administrative remedies as to that claim. *See Teffera v. N. Tex. Tollway Auth.*, 121 Fed. App'x. 18, 21 (5th Cir. 2004) (noting that where plaintiff did not check the retaliation box on his EEOC charge, plaintiff did not exhaust his claim with the EEOC and therefore could not bring the claim in a civil action); *See McCray v. DPC Indus., Inc*., 942 F. Supp. 288, 294 (E.D. Tex. 1996) ("[Plaintiff] did not check the retaliation box on his EEOC charge, and the text of the charge does not refer to retaliation or contain any factual allegations to support a retaliation claim. This failure to exhaust administrative remedies bars [hi]s retaliation claim in this lawsuit.").

Here, Bills admits that he did not include retaliation as a separate count in his EEOC Charge (Dkt. #23 at p. 7).  Nor could he dispute this fact.  The evidence shows that in Bills' Charge of Discrimination, though he marked several boxes of alleged discrimination, Bills failed to mark the box for "retaliation" (Dkt. #22, Exhibit 2).  Further, nowhere in his Charge did he allege facts that would give rise to a claim of retaliation (See Dkt. #22, Exhibit 2).  Thus, the Court finds that Bills failed to exhaust his administrative remedies.

Additionally, Walmart is also entitled to summary judgment because Bills did not establish a *prima facie* case of retaliation.  Like Bills' other discrimination claims under the ADA and ADEA, the *McDonnell Douglas* burden-shifting framework applies to his retaliation claim. *Sherrod v. Am. Airlines, Inc*., 132 F.3d 1112, 1112 (5th Cir. 1998).  To establish a *prima facie* case of retaliation under the ADA or ADEA, the plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *Valderaz v. Lubbock Cty. Hosp. Dist*., 611 F. App'x 816,

820 (5th Cir. 2015) (per curiam) (citation omitted).  If "the plaintiff has established a *prima facie* case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action."  *Nall v. BNSF Ry. Co*., 917 F.3d 335, 349 (5th Cir. 2019) (internal quotations omitted).  If the defendant does so, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation.  Ultimately, the employee must show that but for the protected activity, the adverse employment action would not have occurred." *Id.* (internal citations omitted).

Here, Walmart correctly asserts that Bills cannot establish a *prima facie* case of retaliation. First, it is unclear what protected activity Bills undertook and what adverse employment action by Walmart form the basis of Bills' retaliation claim.  In his complaint, Bills asserts that Walmart retaliated against him by "refus[ing] to verify [Bill]'s Walmart employment" (Dkt. #1 ¶ 42).  Thus, the complaint seems to point to Walmart's actions in verifying his employment as the adverse action taken by Walmart.  Accordingly, in its summary judgment motion, Walmart assumes that this is the adverse action and the filing of Bills' EEOC charge form is the protected activity for Bills' retaliation claim.  This makes sense—as filing an EEOC charge is indisputably a protected activity.  However, Bills' response complicates matters.  In his response, Bills asserts that Walmart "retaliated against him for taking such a lengthy (unpaid) leave of absence" (Dkt. #23 at p. 6). Thus, this assertion insinuates that the protected activity of his retaliation claim is his lengthy leave of absence and the adverse action by Walmart is his termination.  But this insinuation misses the mark—Bills' leave of absence cannot form the basis of his retaliation claim. Indeed, it is undisputed that an extended leave under Walmart's Personal Leave Policy is not job protected, and Bills' FMLA leave had expired many months prior (Dkt. #22, Exhibit 1 at p. 105, 114; Exhibit

4).  Accordingly, because Bills' extended leave of absence under Walmart's Personal Leave Policy is not considered a protected activity, it cannot form the basis of Bills' retaliation claim.

Aware of no other protected activity that Bills engaged in, the Court proceeds with the assumption that Bills' retaliation claim must stem from the filing of his EEOC charge.  Even so, the claim still fails.  For the third element of his *prima facie* case, Bills must establish a causal connection between the protected activity and the alleged adverse action—whether its Walmart's termination of Bills or Walmart's actions in verifying Bills' employment.  But, here, since Bills did not file his EEOC Charge until *after* any alleged adverse action, a causal link cannot be established.  Indeed, Bills did not file his EEOC charge until January 27, 2020—over four months after he was terminated, and Walmart sent the allegedly delayed and inaccurate employment verification to Martin Transport (Dkt. #22, Exhibit 2).  Accordingly, because Bills failed to exhaust his administrative remedies and has not established a *prima facie* case of retaliation, the Court finds summary judgment warranted on Bills' retaliation claims.  The Court now turns to Bills' Texas IIED tort claim.

### IV.      Intentional Infliction of Emotional Distress Claim

Walmart's final argument in its summary judgment motion contends Bills' IIED claim should be dismissed because the evidence shows that the "IIED claim is premised on the same alleged conduct as his other statutory claims" (Dkt. #22 at p. 29).  Bills' response does not address Walmart's IIED arguments or even mention his IIED claim.  This alone is fatal to Bills' IIED claim. *See Hull v. Kapstone Container Corp*., No. 3:17-cv-0641, 2018 WL 4409798, at *2 (N.D. Tex. Sept. 17, 2018) ("When a party fails to respond to an argument in the opposing party's motion for summary judgment, the party concedes that argument.").  Thus, the Court considers Bills' IIED

claim abandoned, and summary judgment warranted on that ground alone.  But even if Bills had not abandoned the claim, it still fails.

Under Texas law, "a plaintiff may not bring an [intentional infliction of emotional distress] claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.,* 502 F.Supp.2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004)).  IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger,* 144 S.W.3d at 447). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id*. As such, "a plaintiff cannot bring a claim for intentional infliction of emotional distress against a defendant where the plaintiff could bring a state statutory claim or other tort claim against that defendant based on the same conduct alleged." *Rawlings v. Travelers Prop. Cas. Ins. Co.,* 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) (O'Connor, J.) (citing *Zeltwanger,* 144 S.W.3d at 441–51; *Creditwatch, Inc.,* 157 S.W.3d at 815–17).

Here, Bills testified unequivocally in his deposition that there are no independent facts that make up his IIED claim (Dkt. #22, Exhibit 1 at p. 26).  Thus, his testimony makes it clear that his IIED claim is premised on the same alleged conduct as his other statutory claims.  Summary judgment is thus appropriate on his IIED claim, regardless of whether he can succeed on his other claims. *See Stephenson v. Nokia, Inc*., No. 3-06-CV-2204, 2008 WL 2669492, at * 8 (N.D. Tex. May 1, 2008) (granting summary judgment on IIED claim where ADA and IIED claims were based on the same facts); *Smith v. Methodist Hosps. of Dall.*, No. 3:07-CV-1230, 2008 WL 5336342, at *5 (N.D. Tex. Dec. 19, 2008).  Accordingly, the Court grants Walmart's motion for summary judgment on Bills' IIED claim.

**CONCLUSION**

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #22) is hereby **GRANTED in its entirety.**  All claims asserted by Plaintiff in this action are hereby dismissed with prejudice.

**IT IS SO ORDERED.**

**SIGNED this 8th day of February, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE